UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

REDFISH     KEY     VILLAS
CONDOMINIUM     ASSOCIATION,
INC.,  a  Florida  not-for-
profit corporation,

       Plaintiff,

v.                                    Case No: 2:13-cv-241-FtM-29CM

AMERISURE INSURANCE COMPANY,
a Michigan corporation,

       Defendant.

_____


## OPINION AND ORDER

In  this  case  plaintiff  Redfish  Key  Villas  Condominium
Association,  Inc.  (Redfish  or  plaintiff)  seeks  a  declaratory
judgment and damages from Amerisure Insurance Company (Amerisure
or  defendant)  based  upon  defective  stucco  work  performed  by  a
subcontractor of Amerisure's insured, Dooley Mack Constructors,
Inc. (DooleyMack).   The matter is now before the Court on the
defendant's Motion for Summary Judgment (Doc. #66), which asserts
that Amerisure is entitled to judgment because (1) DooleyMack did
not  notify  Amerisure  of  Redfish's  lawsuit  as  required  by  the
insurance  policy,  and  (2)  the  damages  sought  by  Redfish  involve
solely  the  defective  work  of  the  stucco  subcontractor,  which  are
not covered by the insurance policy.   Plaintiff filed a Response

in Opposition (Doc. #78) asserting that material issues of disputed facts preclude summary judgment.  The Court agrees with plaintiff, and therefore denies the motion for summary judgment.

## I.

Summary judgment is appropriate only when the Court is satisfied that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "An issue of fact is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party."  Baby Buddies, Inc. v. Toys "R" Us, Inc., 611 F.3d 1308, 1314 (11th Cir. 2010).  A fact is "material" if it may affect the outcome of the suit under governing law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  "A court must decide 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" Hickson Corp. v. N. Crossarm Co., Inc., 357 F.3d 1256, 1260 (11th Cir. 2004)(citing Anderson, 477 U.S. at 251).

In ruling on a motion for summary judgment, the Court views all evidence and draws all reasonable inferences in favor of the non-moving party.  Scott v. Harris, 550 U.S. 372, 380 (2007); Tana v. Dantanna's, 611 F.3d 767, 772 (11th Cir. 2010).  However, "if reasonable minds might differ on the inferences arising from

undisputed facts, then the court should deny summary judgment." St. Charles Foods, Inc. v. America's Favorite Chicken Co., 198 F.3d 815, 819 (11th Cir. 1999) (quoting Warrior Tombigbee Transp. Co. v. M/V Nan Fung, 695 F.2d 1294, 1296 (11th Cir. 1983)(finding summary judgment "may be inappropriate even where the parties agree on the basic facts, but disagree about the factual inferences that should be drawn from these facts")). "If a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, then the court should not grant summary judgment." Allen v. Bd. of Pub. Educ., 495 F.3d 1306, 1315 (11th Cir. 2007).

## II.

On or about June 24, 2005, DooleyMack entered into a construction contract with Redfish Key, LLC (the developer) for the construction of a four story condominium building with a covered parking area. (Doc. #89, p. 11.) This construction contract required DooleyMack to obtain general liability insurance, which included completed operations liability coverage. (Id.) On or about October 1, 2006, DooleyMack obtained General Liability Policy No. GL 2015083 (the Policy) from Amerisure, which was renewed every year through October 2011. (Id.)

DooleyMack subcontracted with R. Simpson Plastering & Stucco, Inc. (Simpson Stucco) to perform the stucco and plaster work on

Redfish Key Villas.  (Id.)  It is not disputed that the stucco and plaster work performed by Simpson Stucco was defective.  (Id.)

Plaintiff asserts that in early 2010, its members[1] noticed several water leaks, which initially were believed to be related to windows.  After the windows were resealed, water intrusion continued and the stucco started delaminating.  On February 9, 2011, Redfish sent DooleyMack a Construction Defect Claim Notice pursuant to Section 558.004 of the Florida Statutes (the 558 Notice).  (Doc. #2-3, Exh. C.)  The 558 Notice asserted defects including delaminating stucco, spalling concrete, rusty re-bar, and substantial cracks in the stucco walls which caused significant water intrusion, water damage, and weakening of the structure. (Id., pp. 1-2.)  The 558 Notice also states plaintiff's intent to file a civil lawsuit if resolution of the construction deficiencies was not obtained.  (Id., p. 4.)  On April 21, 2011, DooleyMack forwarded the 558 Notice to Amerisure, which Amerisure concedes it received.  Amerisure asserts it immediately responded by communicating with DooleyMack about the loss, but never inspected the project.  Amerisure also asserts that it inquired about the status of the claim from both DooleyMack and Redfish from April

---

[1] The developer turned the condominium project over to plaintiff Redfish on June 21, 2007.

2011 through November 2012, with little or no response.   (Doc. #66, p. 2, ¶5.)

DooleyMack was unable to repair the defective stucco because of its dire financial condition.   In and around January 2011, Redfish hired Spectrum Contracting, Inc. (Spectrum) to remediate the damage caused by the defective work of Simpson Stucco.   (Doc. #62-1, p. 113.)   The repairs were completed on or about July 21, 2012, for a total cost of $202,902.97, which was paid by Redfish.

On or about February 6, 2012, while repairs were still pending, Redfish filed a two-count Complaint against DooleyMack in Charlotte County Circuit Court seeking damages for the defective stucco work (the DooleyMack lawsuit).   DooleyMack was served with process on February 13, 2012, and on February 16, 2012, counsel for DooleyMack filed a Notice of Appearance in the lawsuit. DooleyMack filed nothing further in the case.   On April 9, 2012, a default was issued against DooleyMack.   On August 17, 2012, after an evidentiary hearing on damages, the Charlotte County Circuit Court issued a default judgment in favor of Redfish and against Gulf Coast Project Services, Inc. (f/k/a DooleyMack) in the amount of $202,902.97.   (Doc. #2-5, Ex. E.)

On November 2, 2012, Kyle Summer (Summer), claims supervisor of Amerisure, sent an e-mail to Redfish's counsel which identified Amerisure as an insurance carrier for DooleyMack.   Summer stated

he was attempting to determine the current status of the 558 Notice and any remediation or repairs that may have taken place. Plaintiff asserts that this was its first notice of any insurance policy by DooleyMack. (Doc. #2-6, Exh. F.) On the same day, Redfish's counsel responded by email requesting information as to how Amerisure planned on satisfying the judgment against DooleyMack. Amerisure asserts this was its first notice that the DooleyMack lawsuit had been filed.

On November 26, 2012, pursuant to Summer's request, Redfish sent Amerisure documents relating to the lawsuit. On February 8, 2013, Amerisure sent a letter to Redfish denying coverage for the default judgment under the Policy, asserting that it had been materially prejudiced by DooleyMack's failure to provide Amerisure notice of the lawsuit as required by the Policy. (Doc. #2-7, Exh. G.) No other basis for denial of coverage was asserted.

On March 13, 2013, Redfish filed a two-count Complaint (Doc. #2) against Amerisure in Charlotte County Circuit Court, seeking declaratory relief and alleging a breach of the Policy as a third-party beneficiary. On March 28, 2013, Amerisure removed this case to federal court on the basis of diversity jurisdiction. (Doc. #1.)

### III.

Amerisure asserts that it did not owe either DooleyMack or Redfish any duty under the insurance Policy because DooleyMack did not notify Amerisure of the DooleyMack lawsuit, as required by the Policy.  This lack of notice, Amerisure asserts, breached the terms of the Policy and was prejudicial to its opportunity to eliminate or reduce the loss by participation in the defense of the suit. (Doc. #66, pp. 4, 6.)

### A. Notice Principles

While variously phrased under Florida law, it is clear that resolution of the notice issue is a multi-step process.  First, the Court must determine if there is a contractual notice requirement and, if so, its scope.  When an insurance contract contains a provision which requires notice to the insurer of a claim, an insured must give such notice.  1500 Coral Towers Condo. Ass'n, Inc. v. Citizens Prop. Ins. Corp., 112 So. 3d 541, 543 (Fla. 3d DCA 2013).  "The failure of an insured to give a timely notice of loss in contravention of a policy provision is a legal basis for the denial of recovery under the policy."  LoBello v. State Farm Fla. Ins. Co., ___ So. 3d ___, 2014 WL 2751037, *3 (Fla. 2d DCA June 18, 2014).

Second, the Court must determine whether or not notice was timely given.  LoBello.  If notice was timely, the analysis is

over and plaintiff prevails on the notice issue. Id. If the notice was untimely, there is a presumption that the insurer is prejudiced by the delayed notice. Id. If no notice was provided altogether, there is also a presumption of prejudice. Indem. Ins. Corp. of DC v. Caylao, 130 So. 3d 783, 787 n.7 (Fla. 1st DCA 2014).

Third, if the notice has been determined to be untimely or absent, and thus prejudice to the insurer is presumed, the insured must overcome the presumption by proving that the insurer was not prejudiced. LoBello. "If the insured breaches the notice provision, prejudice to the insurer will be presumed, but may be rebutted by a showing that the insurer has not been prejudiced by the lack of notice." Bankers Ins. Co. v. Macias, 475 So. 2d 1216, 1218 (Fla. 1985)(citations omitted). Phrased differently, "an insured's violation of a notice requirement [by failing to timely notify the insurer of the lawsuit] does not relieve the insurer of its contractual obligation to defend [or indemnify] when no prejudice is shown." BellSouth Telecomms., Inc. v. Church & Tower of Fla., Inc., 930 So. 2d 668, 671 (Fla. 3d DCA 2006). "An insurer is prejudiced by untimely notice when the underlying purpose of the notice requirement is frustrated by late notice." 1500 Coral Towers, 112 So. 3d at 544. "The purpose of a provision for notice and proofs of loss is to enable the insurer to evaluate its rights and liabilities, to afford it an opportunity to make a timely

investigation, and to prevent fraud and imposition upon it."
<u>LoBello</u> (citations omitted).

**B. Application of Notice Principles**

**(1)  Notice Requirement:**

It is clear that the Policy does contain a notice requirement for DooleyMack.   Section IV of the Commercial General Liability Coverage Form (Doc. #2-2) portion of the Policy provides:

**2. Duties In The Event Of Occurrence, Offense, Claim or Suit**

. . .

**b.** If a claim is made or "suit" is brought against any insured, you must:

**(1)** Immediately record the specifics of the claim or "suit" and the date received; and

**(2)** Notify us as soon as practicable.

You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

**c.** You and any other involved insured must:

**(1)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

**(2)** Authorize us to obtain records and other information:

**(3)** Cooperate with us in the investigation or settlement of the claim or defense against the "suit': and

**(4)** Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

**d.** No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

(Doc. #2-2, Exh. B, pp. 24-25.)  "Suit" is a defined term which means "a civil proceeding in which damages because of . . . 'property damage' . . . to which this insurance applies are alleged."  (Id., p. 29.)  Thus, DooleyMack was required to notify Amerisure "as soon as practicable" if "a claim is made" and if a "suit is brought" against DooleyMack.  The Court rejects plaintiff's argument that the "or" in Section IV.2.b renders the obligation ambiguous.  Notice is required both when a claim is made and when a lawsuit is filed.  Caylao, 130 So. 3d at 786.

    **(2)  Timing of Notice:**

A requirement of notice "as soon as practicable" requires "notice to be given with reasonable dispatch and within a reasonable time *in view of all the facts and circumstances of each particular case*."  LoBello, 2014 WL at *4 (quoting Am. Fire & Cas. Co. v. Collura, 163 So. 2d 784, 792 (Fla. 2d DCA 1964))(emphasis in original).  This is ordinarily a question of fact for the jury, unless the undisputed evidence will not support a finding that the insured gave notice as soon as practicable.  Id.

The 558 Notice (Doc. #2-3, Exh. C) was sent to DooleyMack in February 2011, and forwarded to and received by Amerisure no later than April 20, 2011.  (Doc. #2-3, Exh. C; Doc. #62-1, Summer Dep.

81:11-14; 97:3-10, Jan, 16, 2014.) Amerisure does not argue that there was a lack of notice for the "claim" set forth in the 558 Notice.

Amerisure does argue, however, that there was a lack of notice of the DooleyMack lawsuit. The DooleyMack lawsuit was filed on February 6, 2012, and the default judgment was entered on August 17, 2012. While there were conversations between Amerisure and DooleyMack in this time frame, there is no evidence that Amerisure was even verbally notified of the actual filing of the DooleyMack lawsuit. Indeed, there is no evidence that DooleyMack *ever* informed Amerisure of the actual lawsuit filed by Redfish. It was not until November 2, 2012, when Redfish sent an e-mail notifying Amerisure of the entry of a default judgment against DooleyMack in state court, that Amerisure was notified that a suit had been brought. There are no facts from which a reasonable trier of fact could determine that the complete lack of notice by DooleyMack satisfied the "as soon as practicable" requirement of the Policy.

Plaintiff suggests that because Amerisure had notice of the claim pursuant to the 558 Notice, which contained the threat of an imminent lawsuit, there was sufficient notice even if there was no specific notice of the actual lawsuit. The Court disagrees. The Policy requires notice of both a "claim" and notice of a "suit". Amerisure had a contractual right to notification of the filing of

a suit, even after it had been notified of the claim.  E.g., Webb v. Zurich Ins. Co., 200 F.3d 759, 761 (11th Cir. 2000) (notice requirements not met when fails to address that lawsuit in fact filed); Caylao, 130 So. 3d at 786 n.6 (must show that breach resulted in the existence of the judgment when entered and also when collection sought).  No such notice was given until after a judgment had been obtained, which is certainly not "as soon as practicable."

### (3)  Rebuttal of Presumed Prejudice:

Amerisure asserts that plaintiff cannot rebut the presumption of prejudice resulting from the failure to provide notice of the lawsuit against its insured.  At his deposition, Mr. Summer suggested that the prejudice to Amerisure included the inability to conduct discovery, dispute liability and damages, participate in settlement discussions, and to file claims against others. (Summer Dep. 216:21-217:6.)  Plaintiff disagrees, asserting that there is at least an issue of material disputed facts regarding whether Amerisure was prejudiced by the delay.

As noted earlier, "[a]n insurer is prejudiced by untimely notice when the underlying purpose of the notice requirement is frustrated by late notice."  1500 Coral Towers, 112 So. 3d at 544. Here, there is at least a disputed issue of material fact whether the lack of notice of the lawsuit by DooleyMack was prejudicial to

Amerisure.   The  delayed  notice  of  the  lawsuit  not  inhibit
Amerisure's ability to determine the existence of the construction
defects  and  the  entity  responsible  for  the  faulty  construction.
Amerisure  had  actual  access  to  substantial  information  regarding
the   claimed   construction   defects.      Indeed,   the   Pretrial
Stipulation states that the subcontractor provided faulty stucco.
If, as Amerisure asserts, the lawsuit was defensible, Amerisure
had  an  obligation  to  seek  to  set  aside  the  judgment  under  Florida
Rule  of  Civil  Procedure  1.540.   <u>Caylao</u>, 130 So. 3d at 787-788.
Plaintiff  has  proffered  sufficient  facts  which  create  material
issues  which  cannot  be  resolved  on  summary  judgment.  (Doc. #78,
pp. 10-12.)

## IV.

Amerisure  also  argues  that  the  defective  work  of  Simpson
Stucco  is  not  covered  by  the  Policy  because  the  $202,902.97  in
damages did not involve damage to "other property", only stucco
remediation,  and  that  Redfish  failed  to  mitigate  the  damages.
Plaintiff  responds  that  whether  the  damage  was  due  to  underlying
issues remains a question of fact.

Under  Section  V  of  the  Policy,  "Property  damage"  means
"[p]hysical  injury  to  tangible  property,  including  all  resulting
loss of use of that property." (Doc. #2-2, p. 29.) Under Section
I  of  the  Policy,  "property  damage"  does  not  include  "[t]hat

particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations", or if to "your work"[2] "arising out of it or any part of it" but the exclusion "does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor." (Doc. #2-2, pp. 18-19.)

Mr. Summer testified with regard to having had discussions with Chuck Evans of DooleyMack regarding water intrusion coming in through the walls, and Joel C. Potter of Spectrum testified that they company tested for water leaks and the painting proposal came after the proposal to repair hairline cracks. (Doc. #62-1, p.

---

[2]"Your Work" is defined in the Policy as follows:

**a.** Means:

**(1)** Work or operations performed by you or on your behalf; and

**(2)** Materials, parts or equipment furnished in connection with such work or operations.

**b.** Includes:

**(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work", and

**(2)** The providing of or failure to provide warnings or instructions.

(Doc. #2-2, p. 30.)

113; Doc. #65-1, p. 24.)  Plaintiff has also presented sufficient facts to support coverage under the Policy.  (Doc. #78, pp. 13-18.)

Accordingly, it is now

**ORDERED:**

Defendant's Motion for Summary Judgment (Doc. #66) is **DENIED**.

**DONE AND ORDERED** at Fort Myers, Florida, this ___23rd___ day of October, 2014.

JOHN E. STEELE
UNITED STATES DISTRICT JUDGE

Copies:
Counsel of record